TRUST NO. 5522 AND TRUST NO. 5644, BELLEHURST SYNDICATE, SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58311. Promulgated April 26, 1933.

*George G. Witter, Esq.*, and *M. F. Mitchell, Esq.*, for the petitioner.
*Lloyd W. Creason, Esq.*, and *J. M. Leinenkugel, Esq.*, for the respondent.

1252

## OPINION.

SMITH: The petitioner first alleges that:

(a) The Commissioner has erroneously treated the Petitioner as an association and proposes to tax it as such, whereas the Petitioner is a Trust with no taxable income.

On brief, the petitioner states: " 1. The first issue we submit without argument."

The facts of record do not distinguish this trust from others that the Board and courts have held to be associations taxable as corporations. The Circuit Court of Appeals for the Ninth Circuit held a similar real estate subdivision trust to be an association in *Trust No. 5833, Security-First Nat. Bank of Los Angeles* v. *Welch*, 54 Fed. (2d) 323. See also *Merchants Trust Co.* v. *Welch*, 59 Fed. (2d) 630; *Lloyd M. Willis et al., Trustees*, 22 B. T. A. 564; affd., 58 Fed. (2d) 121; *G. F. Sloan*, 24 B. T. A. 61; *Adelaide Park Land*, 25 B. T. A. 211.

The second and principal issue is raised by the following allegation of error:

(b) The Commissioner has erroneously placed a value of only fifty per cent of face value upon the agreements for payment of balance owing for properties sold by this Petitioner in the years 1923, 1924, 1925 and 1926, whereas said agreements had a fair market value of 85% to 100% of their face value.

Neither party contends that the Bellehurst property was sold and the income therefrom reported on the installment sales basis. Both are in apparent agreement that lots were sold for cash and deferred payments, the latter covered by the sales contracts, and that the income at the time of the sales and at the time of the collections is determinable from the fair market value of the sales contracts at the time of the sales. Such contracts may or may not have a fair market value, as the evidence adduced in each particular case warrants. Cf. *Ravlin Corp.*, 19 B. T. A. 1112; *Rapid Transit Land Sales Co.*, 20 B. T. A. 608.

To support its contentions upon this point the petitioner submitted the testimony of several witnesses, all of whom testified that in their opinion the 50 per cent valuation used by the respondent in the determination of deficiencies was entirely too low. They testified, generally, that in their opinion the contracts had a fair market value of from 90 to 100 per cent of their unpaid balances. The respondent, on the other hand, submitted the testimony of several witnesses, well qualified to express an opinion upon the value of such contracts, who testified that in their opinion the contracts had no

fair market value at the date of their receipt. This was predicated, in part, upon the fact that the selling agent was entitled to receive a commission of 25 per cent of the sales price, whereas the down payment by the lot purchaser ranged generally from 20 to 30 per cent and in some cases less than 20 per cent; also upon the fact that it was not customary to sell contracts of this sort and that there was no established market for them.

From a consideration of all of the evidence we are of opinion that the fair market value, if any, of the contracts was not in excess of 50 per cent of the unpaid balances upon the contracts. That is the amount used by the Commissioner in the computation of deficiencies. Whether the fair market value at the date of the receipt of the contracts was less than the amount determined by the respondent is not necessary for us to determine. The petitioner's contention upon this point is not sustained.

The next issue is raised by the following allegation:

(c) In each of the years 1928 and 1929 the Commissioner has erroneously included in Petitioner's income moneys placed in the hands of the Petitioner by purchasers for the payment of city and county taxes, to which the Petitioner still held title for security purposes. Said moneys were in no sense income to the Petitioner. The Petitioner was merely a conduit through which purchasers who still owed balances on the purchase price of their properties paid their city and county taxes.

By motion duly granted, the respondent moved to amend the pleadings to conform to the proof and affirmatively alleges that:

(g) In the alternative, the respondent erred in allowing as deductions county and city taxes paid in the amount of $12,879.46 and $9,086.71 for the years 1928 and 1929, respectively, or any amounts. '

There is no dispute as to the amounts received by the petitioner from the lot purchasers or as to the amounts of taxes paid by the petitioner. It appears from the evidence that the petitioner paid the taxes upon the lots standing in its name at the date the assessment was made and then collected from the lot purchasers the amount of tax assessed against or allocated to the lot covered by the contract of purchase. The petitioner kept no separate records of the funds thus collected from the lot purchasers. Collections from this source were commingled with the general funds of the trust. The difference between the amount received by the petitioner and the amount paid for taxes in the years 1928 and 1929 is unexplained, unless it be that some of the collections were for taxes paid by the petitioner in prior years. In the determination of the deficiencies the petitioner has been allowed the deduction for all taxes paid by it, and since the amounts received from the lot purchasers were not segregated on the petitioner's books of account or treated as trust

funds, and since we have no knowledge of the taxes, if any, paid by the petitioner on lots repossessed and owned by it, we have no basis for disturbing the respondent's determination. His action in including the amounts received in the petitioner's gross income is sustained. It will be unnecessary to discuss the alternative allegation of the respondent.

The remaining allegation of error in Docket No. 58311 is that:

(d) The Commissioner has erroneously failed and neglected to allow as deductions to the Petitioner certain amounts paid out in each of the years 1928 and 1929 for services rendered in the successful operation of said Trust.

The petitioner claims as an ordinary and necessary expense deductions of $92,500 in 1928 and $57,700 in 1929, which it contends are reasonable allowances for compensation for services actually rendered by Thom, Leimert, Bates, Borland, Cotton, and Cooper. There is no evidence to show that these amounts were actually paid by the trust or that these parties received such amounts as compensation, or to show that if paid the respondent has disallowed them as deductions from gross income in the computation of the deficiencies. The record discloses that the 50 per cent of the profits specified in Article VII of the trust agreement was payable to Thom, after the beneficiaries had received 200 per cent on their investment and 50 per cent of the balance of the profits. Pursuant to this provision certain amounts were paid to Thom. All of the parties sharing in these sums were beneficiaries of the trust. Leimert was sales agent and as such received a commission of 25 per cent of the selling price of each lot. Bates and Borland were the improvement contractors and as such were paid the contract price for their work. The services of these several individuals were doubtless valuable and may not have been adequately compensated for otherwise, yet the plain language of the trust instrument does not show that these payments were made as compensation. It is reasonable to infer from the terms of the trust and the activities of these persons (as shown by the record) in the interest of the Bellehurst property, that provision was made for them to have a greater share in the profits than those beneficiaries who were not as active. While under the terms of the trust agreement there was a liability to Thom for the 50 per cent of the profits, there was no provision for compensating him and his associates for any services to be rendered. The petitioner has not even attempted to prove that the trust was liable for such compensation to these individuals. But in any event, we have not been shown the reasonableness of the claimed deductions. In the circumstances we leave the parties as we found them.

Reviewed by the Board.

*Judgment will be entered for the respondent.*